| | |
|---|---|
| SIMONTRAY BYRUM; ASHLEY CAMERON; CORIN T. HARRIS; LANARD WILLIAMS; CHRISTOPHER MABRY; COURTNEY WIESEL; LEON SPRINGER; ERIC KELLY; TONY RUCKER; PHILLIP JONES; HAROLD ELLIOTT; TIMOTHY OSBORNE; MICHAEL YEARTA; RONALD WILKERSON; COREY BUTTS; DANIEL CLOUD; JEREMY WHITE; BURDETT BRUMMITT; JEFF WEEMS; CEDRIC CALDWELL; AVERY RICHARD; CLARENCE PORTER; and JAMES LESLIE, | CIVIL ACTION NO.: CV611-011 |
| Plaintiffs, | |
| v. | |
| GEORGIA DEPARTMENT OF CORRECTIONS; STEVEN UPTON, Warden, Georgia State Prison; WENDELL FOWLER, Deputy Warden; DANE DASHER, Deputy Warden; and CHRIS TUCKER, Correctional Officer, | |
| Defendants. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiffs, who are or were incarcerated at Georgia State Prison in Reidsville, Georgia, through counsel, filed a cause of action pursuant to 42 U.S.C. § 1983. Defendants filed a Motion to Dismiss, to which Plaintiffs responded. Defendants filed a

Reply. For the reasons which follow, Defendants' Motion should be **GRANTED** in part, **DENIED** in part, and **DISMISSED** in part.

## STATEMENT OF THE CASE

Plaintiffs assert that a fire occurred in the E-1 dormitory on February 2, 2009, and, at the time of the fire, Defendant Tucker was not at his post in the E-1 dormitory. Plaintiffs also assert that the fire alarm was set in silent mode to alert the control booth officer of a fire, but not the inmates. Plaintiffs contend that Defendant Upton allowed Defendant Tucker to be away from his post, and Defendants Fowler and Dasher knew Defendant Tucker was away from his post at the time of the fire. Plaintiffs allege that Defendants "failed to maintain the sprinkler system in working order and allowed the fire alarm system to be silenced, which allowed a fire to burn unchecked for an extended period of time and resulted in dormitory/cell areas being completed (sic) filled with heat, flames and thick black smoke." (Doc. No. 1, p. 8). Plaintiffs aver that they were confined in their cells with no indication that they would get help and "were exposed for a prolonged period of time to the smoke, soot and heat, which resulted in serious physical injury[.]" (Id.).

Defendants contend that the claims of all Plaintiffs, except Plaintiffs Mabry and Richard, should be dismissed, as these other Plaintiffs did not exhaust their administrative remedies. Defendants also contend that Plaintiffs' claims against the Department of Corrections and against Defendants in their official capacities for monetary damages are barred. Defendants allege that Plaintiffs' Complaint fails to state a claim upon which relief may be granted. Thus, Defendants maintain, Plaintiffs' Complaint should be dismissed; in the alternative, Defendants move to have Plaintiffs

provide a more definite statement. Finally, Defendants contend that Plaintiffs' state law claims should be dismissed.

## STANDARD OF REVIEW

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

## DISCUSSION AND CITATION TO AUTHORITY

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its

3

proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues . . . ." Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376-77.

Defendants contend that all of the Plaintiffs, except Plaintiffs Mabry and Richard, failed to exhaust their administrative remedies prior to the filing of their Complaint. Specifically, Defendants assert that Plaintiffs Wiegel, Springer, Porter, Leslie, Elliot,

AO 72A
(Rev. 8/82)

Cloud, Cameron, and Brummitt failed to file any grievance related to the February 2, 2009, fire in the E-1 dormitory. Defendants also assert that Plaintiffs Wilkerson, Byrum, and Harris only filed grievances concerning alleged missing or confiscated property in relation to the fire, and that Plaintiffs Williams, Rucker, Osborne, Burtts, White, Caldwell, Yearta, Jones, and Weems filed grievances related to the fire, but these Plaintiffs failed to complete the grievance process by filing formal grievances and/or an appeal.

Plaintiffs aver that Mabry's and Richard's appeals were denied by restating the process that was employed during the evacuation, and there was no discussion about allowing an officer to be absent from his duty station with a silent alarm being sounded in an empty control room. According to Plaintiffs, the issue of an officer being away from his duty station was a commonality of all of the grievances filed. Plaintiffs allege that Plaintiffs Mabry's and Richard's grievances fell on deaf ears and that Plaintiffs Porter and Wilkerson complained to Internal Affairs and Inmate Affairs about conditions which led to the fire to no avail. Thus, Plaintiffs contend that, as demonstrated by Plaintiffs Mabry's and Richard's "wholly fruitless" efforts, there were no administrative remedies available to them. (Doc. No. 15, p. 7). Plaintiffs contend that Daniel Cloud and Eric Kelley are not inmates and are not subject to exhaustion requirements.[1] Plaintiffs Cameron, Porter, Rucker and Brummitt "are adamant that they initiated the grievance process." (Id. at p. 8). Plaintiffs state that Plaintiff Porter lodged complaints with Internal Affairs and continues to grieve about his mental health and inadequate

---

[1] The Court rejects this contention as a viable reason to excuse Plaintiffs Cloud and Kelley from the exhaustion requirement. First, Plaintiffs Cloud and Kelley were inmates at the time Plaintiffs' attorney filed this cause action on February 2, 2011. According to the Georgia Department of Corrections' website, Plaintiff Cloud's period of incarceration ended on May 3, 2011, and Plaintiff Kelley's ended on August 31, 2011. www.dcor.state.ga.us. Accordingly, the Prisoner Litigation Reform Act, of which the exhaustion requirement is a part, is applicable to Plaintiffs Cloud and Kelley. See, e.g., 42 U.S.C. § 1997e(a).

5

medical treatment after the fire, but Defendants did not include the grievances filed by Plaintiffs Porter and Cameron. Plaintiffs Rucker and Brummitt assert that the paperwork they had related to grievance filings was confiscated, and Defendants concede that Plaintiff Rucker at least began the grievance process. Plaintiffs also assert that the grievances Plaintiffs Burtts and Rucker filed were rejected for "irrational" "reasons" (id. at 11), such as containing more than one (1) issue or being untimely. Plaintiffs further assert the personal injury and medical complaints were "clearly and plainly known" to the Defendants, including the Warden and Deputy Warden, because all of the inmates were interviewed for an incident report. (Id.).

In support of their position that Plaintiffs except Plaintiffs Mabry and Richard failed to exhaust their administrative remedies, Defendants submitted a copy of Standard Operation Procedure ("SOP") IIB05-0001, which is the Statewide Grievance Procedure applicable to the penal institutions under the operation of the Georgia Department of Corrections. (Doc. No. 8-3). Within the Georgia Department of Corrections, the grievance procedure is a three-step process. Blackerby v. McNeil, No. CV307-071, 2008 WL 5209975, at *4 (S.D. Ga. Oct. 7, 2008). It commences with the filing of an informal grievance which must be filed within ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance." Id. If an inmate is unsatisfied with the resolution of his informal grievance, a formal grievance form must be submitted within five business days. Id. The Warden has thirty calendar days to respond to the formal grievance. Id. If the inmate is not satisfied with the Warden's response, he has five business days to file an appeal; then, the Office of the Commissioner has ninety calendar days to respond. Id. The grievance procedure

6

is terminated upon the issuance of an appeal response. Id. Inmates can grieve about "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections." (Doc. No. 8-3, p. 4). The procedure requires that a "complaint on the Informal Grievance Form must be a single issue/incident[,]" and Informal Grievances with additional pages will be rejected. (Id. at p. 6) (Emphasis supplied). Only one issue is allowed to be addressed in a formal grievance. Any grievance filed out of time or containing more than one issue will be rejected. (Id. at p. 7).

Defendants' supporting documentation reveals that: Plaintiffs Leon Springer and Harold Elliot have not filed any grievances during their incarceration, (Doc. No. 8-7, pp. 3, 7); Plaintiffs James Leslie and Eric Kelley did not file any grievances in 2009 or while they were incarcerated at Georgia State Prison ("GSP") (id. at pp. 5-6); Plaintiff Cortny Wiegel filed only one informal grievance while he was housed at GSP, which was on December 5, 2008 (id. at p. 2); Plaintiff Clarence Porter filed several grievances while he was housed at GSP, yet he filed no grievances regarding the February 2009 fire (id. at p. 4); Plaintiff Daniel Cloud filed two (2) informal grievances during his incarceration at GSP on January 28, 2009, and on April 14, 2009, but filed no formal grievances (id. at p. 8); Plaintiff Ashley Cameron filed a formal grievance on March 10, 2009, regarding mental health issues but no appeal (id. at p. 9); and Plaintiff Berdett Brummitt filed three (3) informal grievances while he was housed at GSP, all of which concerned food services issues, on February 15, February 26, and March 19, 2009. (Id. at p. 10). Plaintiffs Springer, Elliot, Leslie, Kelley, Wiegel, Porter, Cloud, Cameron, and Brummitt either failed to file any grievances, failed to file any grievances while housed at GSP, or

7

filed grievances while housed at GSP which pertained to issues other than the February 2, 2009, fire. These Plaintiffs did not complete (or even initiate) the grievance process, and thus, did not exhaust their administrative remedies prior to filing this cause of action.

Likewise, Plaintiff Ronald Wilkerson did not exhaust his administrative remedies prior to the filing of this cause of action. Plaintiff Wilkerson filed an informal grievance on February 2, 2009, requesting the return or replacement of his property destroyed by the fire. However, this informal grievance was rejected because Plaintiff Wilkerson attached an additional page to the form. There is nothing before the Court which indicates Plaintiff Wilkerson re-filed his informal grievance or a formal grievance. (Doc. No. 8-8, pp. 2-5). On February 10, 2009, Plaintiff Siemontray Byrum filed a formal grievance and asked that his property misplaced after the February 2, 2009, fire be replaced or returned or that he be reimbursed for anything which could not be replaced. Plaintiff Byrum's grievance was partially granted. (Id. at pp. 6-13). Plaintiff Corin Harris filed an informal grievance on February 2, 2009, but his informal grievance pertained to missing or confiscated property and was rejected; there is no evidence Plaintiff Harris filed any other informal grievance or any formal grievance since he has been incarcerated. (Id. at p. 14). Plaintiffs Tony Rucker and Corey Burtts filed Informal Grievances Numbered 6432 and 6712, respectively, regarding the fire at issue on February 3, 2009, which were rejected for containing multiple issues, and it does not appear that Plaintiff Rucker resubmitted an Informal Grievance regarding the fire. (Doc. No. 8-9, pp. 4-6, 10-12). While Plaintiff Burtts filed Informal Grievance Numbered 8006, it was rejected as being untimely, and he did not file any other form regarding the fire.

AO 72A
(Rev. 8/82)

(Id. at pp. 10, 13-14). Plaintiff Jeremy White filed an Informal Grievance regarding the smoke and the fire on February 4, 2009, which was not resolved after response. Plaintiff White requested a formal grievance form, yet he failed to file a formal grievance. (Id. at pp. 15-16). Plaintiff Phillip Jones filed a formal grievance regarding the fire after his informal grievance was denied; however, Plaintiff Jones' formal grievance was denied, and there is no indication that he filed an appeal of this denial. (Id. at pp. 45-53).[2] Plaintiff Jeffery Weems filed a formal grievance on February 3, 2009, and there is no evidence he filed an appeal of the denial of his formal grievance. (Id. at pp. 67-73). Plaintiff Timothy Osborne filed Informal Grievance Number 6143 on February 3, 2009, and received a response. Plaintiff Osborne's complaint was not resolved, and he did not request a formal grievance form. (Doc. No. 8-9, pp. 7-8). Finally, it appears that Plaintiff Michael Yearta did not complete his grievance process. Plaintiff Yearta was transferred to Phillips State Prison in March 2009, which was before he received a response to his formal grievance. At the time the Warden at GSP responded to his grievance, Anessa Kirkley, the Grievance Coordinator at GSP, informed the Grievance Coordinator at Phillips what course should be taken if Plaintiff Yearta wanted to file an appeal and what course should be taken if he did not want to file an appeal. Plaintiff Yearta chose not to appeal. (Id. at pp. 30-31, 41). Plaintiffs Wilkerson, Byrum, Rucker, Burtts, White, Jones, Weems, Osborne, and Yearta did not exhaust their administrative remedies prior to filing this cause of action. These Plaintiffs at least initiated the grievance process, yet they failed to complete it. Moreover,

---

[2] In contrast, Plaintiff Jones did file an appeal of the denial of another of his formal grievances regarding missing or confiscated property stemming from the February 2, 2009, fire. (Doc. No. 8-9, p. 45).

Plaintiffs Wilkerson, Byrum, and Harris filed grievance regarding property issues, which do not form the basis of this cause of action.

Conversely, and despite Defendants' contention to the contrary, it appears that Plaintiffs Lanard Williams and Cedric Caldwell exhausted their administrative remedies prior to the filing of this cause of action. Plaintiff Williams filed Informal Grievance Number 6887 on February 3, 2009, and complained about after-effects of the fire the previous day. According to the documentation Defendants submitted, Plaintiff Williams' complaint was resolved, and he did not request a formal grievance. (Doc. No. 8-9, pp. 2-3). Thus, the grievance process was completed.[3] Likewise, Informal Grievance Number 6138, which Plaintiff Cedric Caldwell filed on February 2, 2009, was resolved, and he did not request a formal grievance form. (Id. at pp. 18-19).

Based on the foregoing, this portion of Defendants' Motion to Dismiss should be **GRANTED** in part and **DENIED** in part. Despite Plaintiffs' counsel's contentions to the contrary, it is of no moment that any possible relief sought through the administrative remedy process would have been fruitless. The futility of the remedy provided for by a grievance process does not render that process completed or otherwise excuse an inmate from completing that process before filing a cause of action pursuant to 42 U.S.C. § 1983. Plaintiffs Wiegel, Springer, Porter, Leslie, Kelley, Elliot, Cloud, Cameron, Brummitt, Wilkerson, Byrum, Rucker, Burtts, White, Jones, Weems, Osborne, and Yearta failed to exhaust their administrative remedies before the filing of this cause

---

[3] SOP IIB05-0001 requires an inmate to complete the Informal Grievance Procedure before the inmate has the option of pursuing his complaint through the formal grievance procedure. (Doc. No. 8-3, p. 7). A fair reading of this requirement, in the undersigned's estimation, is that only when no resolution is reached at the informal grievance stage of the process should an inmate have to start and complete the formal grievance procedure. (Id. at pp. 7-9).

AO 72A
(Rev. 8/82)

of action. Therefore, the claims filed by Plaintiffs Wiegel, Springer, Porter, Leslie, Kelley, Elliot, Cloud, Cameron, Brummitt, Wilkerson, Byrum, Rucker, Burtts, White, Jones, Weems, Osborne, and Yearta against Defendants should be **DISMISSED**, without prejudice. The claims filed by Plaintiffs Christopher Mabry, Avery Richard, Lanard Williams, and Cedric Caldwell should remain pending.

The undersigned reserves recommending any disposition of the remaining portions of Defendants' Motion to Dismiss, and, instead **GRANTS** Defendants' alternative Motion for a More Definite Statement. Accordingly, the remaining portions of Defendants' Motion to Dismiss should be **DISMISSED** at this time. Plaintiffs' counsel shall have twenty-one (21) days to file any additional pleadings in an attempt to clarify her clients' claims. Defendants will then have 14 days after receipt of any additional pleading to file a responsive pleading or to renew the remaining portions of the Motion to Dismiss.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 13th day of September, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

11